The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the record as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to re-hear the parties or their representatives, except as to the average weekly wage issue which the deputy commissioner held open. Plaintiff's testimony as to his earnings is on the official record and the Form 22, as submitted by defendant for consideration during the pendency of this appeal, is, in the discretion of the undersigned, over the plaintiff's objection, HEREBY ADMITTED into the record for consideration in determining an accurate average weekly wage for plaintiff. There has been no stipulation of this issue by the parties as to date, and therefore the undersigned will proceed to make the determination.
There is sufficient convincing evidence of record as it now exists to support the undersigneds' findings of fact, conclusions of law, and ultimate award.
 ***********
Accordingly, the Opinion and Award of the deputy commissioner, filed October 27, 1995, as well as the Amendment filed on May 21, 1996, are incorporated into this opinion and award by reference as if fully set out herein. Based upon all of the competent, credible, and convincing evidence of record, the undersigned make the following additional
 FINDINGS OF FACT
1. Plaintiff is a male who was born March 17, 1967. He completed about two years of college at West Virginia State, which he last attended in 1988. Plaintiff previously worked as a security guard and as a grocery stocker for Harris Teeter grocery stores from 1989 to 1992. He began working for Food Lion in 1993.
2. Plaintiff is a robust young man who is athletic. He regularly works out at a gym and during the summer of 1994, he played softball regularly.
3. When the accident of April 29, 1993 occurred, plaintiff was caught under the pieces of sheetrock for about two minutes before Kenny Mace found him and helped him out from underneath the sheetrock.
4. Following the April 29, 1993 accident, plaintiff was seen by his family physician, Dr. Herbert Kouri, on April 30, 1993, with complaints of diffuse back soreness. Dr. Kouri prescribed Flexeril, a muscle relaxant, and Ibuprofen for pain and inflammation. He also referred plaintiff for physical therapy.
5. On June 8, 1993, plaintiff was seen by Dr. David Humphries of Oweida Sports Medicine and Orthopedic Clinic. Dr. Humphries found no real objective orthopedic problems. He noted that the plaintiff seemed to be exaggerating his symptoms and that his weakness appeared to be intentional. Dr. Humphries referred plaintiff to Dr. Hicks at Charlotte Orthopedic Specialists, for a pain study.
6. A Pentothal Pain Study was done by Dr. Hicks on June 14, 1993. The study showed that plaintiff's pain was nonphysiogenic; that is, there was no physical basis for plaintiff's complaints of pain.
7. After seeing the results of the pain study, on June 21, 1993, Dr. Humphries referred plaintiff to a work hardening program and physical therapy so that plaintiff could strengthen his musculature and prepare for a return to work. Dr. Humphries did not see plaintiff again after that day. However, in his follow-up notes of September 15, 1993, after being contacted by the Defendant, Dr. Humphries indicated he believed that plaintiff should have returned to work as of late July.
8. Plaintiff has also been seen by Dr. David Dupuy, another board certified orthopedic physician, at Charlotte Orthopedic Specialists. Dr. Dupuy saw plaintiff on July 8, 1993. He had also previously treated plaintiff in November, 1990, following an automobile accident; in 1991, after plaintiff hurt his back lifting; and in July, 1992, when plaintiff slipped at work and twisted his knee and ankle. On July 8, 1993, Dr. Dupuy noted all objective findings were normal. Plaintiff had no swelling, no muscle spasms and normal muscle functions. Dr. Dupuy found significant magnification of pain complaints. It was Dr. Dupuy's opinion that the plaintiff should participate in an exercise program for conditioning, but otherwise should return to work within three to six weeks.
9. Plaintiff was also seen in May and June, 1993 at Southern Surgical Associates-Carolina Hand Center. When he was initially seen on May 18, 1993, Dr. Gerald Adams noted no muscle spasms and no tenderness, with normal straight leg raises. He sent plaintiff for physical therapy and took him out of work. Plaintiff was assessed with low back and cervical strain. In addition to the physical therapy, he was treated with ultrasound electrical stimulation. As of May 18, 1993, Dr. Adams anticipated that he could return to regular duty in three weeks.
10. On June 24, 1993, Alexsis, the servicing agent for defendant, sent plaintiff a letter indicating that his workers' compensation claim was being denied. Up until that time, plaintiff had not shown any prior evidence of depression or a psychological condition.
11. When plaintiff was seen by his family physician, Dr. Kouri, on July 6, 1993, no emotional problems were apparent. His depression and despondence first became apparent to Dr. Kouri on plaintiff's visit of August 16, 1993. This was after the date which Dr. Dupuy and Dr. Humphries had indicated plaintiff could have returned to work. However, plaintiff had not returned to work as of that time.
12. As a result of his injury by accident of April 29, 1993, plaintiff sustained a mild back strain. He retained no permanent impairment to his back as result of the accident. Due to his back sprain, he was temporarily unable to return to his regular employment with Food Lion and was temporarily totally disabled from April 19, 1993 through the end of July, 1993. By August 1, 1993, plaintiff was capable of returning to his regular duties in his employment with defendant Food Lion.
13. When Dr. Dupuy saw plaintiff again on October 11, 1993, Dr. Dupuy was surprised that the plaintiff had not yet returned to work. He found no objective basis for plaintiff's complaints and noted at that time that plaintiff's problems were strictly emotional.
14. As a result of the emotional problems which were first becoming apparent in August, 1993, plaintiff has been treated by Dr. Richard Gellar, a psychiatrist. Dr. Gellar is of the opinion that plaintiff has developed post-traumatic stress disorder as a consequence of the accident of April 29, 1993.
15. Plaintiff has also been evaluated by a psychiatrist, Dr. Gerald M. Aronoff, at the request of defendants for an independent psychiatric evaluation. Dr. Aronoff is of the opinion, and the undersigned find it more credible and convincing, that plaintiff does not suffer from post traumatic stress disorder. Rather, plaintiff has a chronic adjustment disorder with mixed features including anxiety, anger and depression. Plaintiff's adjustment disorder was not caused by the accident of April 29, 1993. Rather, plaintiff has reacted with anger to the denial of his workers' compensation claim by the defendant.
16. Post traumatic stress disorder (PTSD) is generally experienced by individuals who have faced a truly traumatic event such as a near death experience like combat or a serious accident. The plaintiff's accident of April 29, 1993, which left him with no permanent physical injuries, and caused only temporary muscle strain, was not a significant trauma that would lead to PTSD.
17. Plaintiff's emotional problems which arose after August, 1993, show his anger directed at Food Lion. He does not manifest classic symptoms of PTSD such as reliving the actual accident, but rather expresses anger toward the company Food Lion itself. The greater weight of the evidence fails to credibly or convincingly establish that he suffers from PTSD.
18. Plaintiff's average weekly wage as of the date of the compensable injury was $342.30, yielding a weekly compensation rate of $228.21.
 ***********
Based upon the foregoing findings of fact, the undersigned make the following
 CONCLUSIONS OF LAW
1. As a result of his compensable injury by accident of April 29, 1993, plaintiff sustained a minor back strain which required conservative short-term medical treatment such as pain medicine and physical therapy. He did not sustain any permanent injury. N.C. Gen. Stat. § 97-2(19), 97-25.
2. The medical treatment rendered for plaintiff's back injury from April through October, 1993, was reasonably necessary to effect a cure or give relief or lessen any period of disability, and is approved. N.C. Gen. Stat. § 97-2(19); § 97-25.
3. The greater weight of the competent, credible, and convincing evidence fails to establish that any emotional or psychiatric condition which plaintiff developed beginning around August 1993 is causally related to his injury by accident of April 29, 1993. N.C. Gen. Stat. § 97-2(6). Defendants are responsible only for payment for the initial assessment by Dr. Gellar and the independent psychiatric assessment by Dr. Aronoff.
4. As a result of his injury by accident of April 29, 1993, plaintiff was unable to earn wages in his regular employment and was temporarily totally disabled from April 29, 1993 through July 31, 1993, and as such, is entitled to compensation at the rate of $228.21 per week for this period of time.
5. Plaintiff's attorney is entitled to a reasonable attorney's fee in the amount of twenty five percent (25%) for services rendered.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff for treatment of his back injury sustained on April 29, 1993, for treatment rendered through October, 1993. Defendants are responsible for payment only of the initial psychiatric assessment of Dr. Gellar and the independent assessment by Dr. Aronoff. Defendants are not responsible for medical bills incurred for plaintiff's ongoing psychiatric treatment.
2. Defendants are responsible for and shall make payment of compensation to plaintiff at the rate of $228.21 per week from April 29, 1993 through July 31, 1993, as temporary total disability. Such amounts, as having accrued, shall be paid in a lump sum, subject to the attorney's fee awarded below and shall include interest from the date of initial hearing pursuant to N.C. Gen. Stat. § 97-86.2, if any of those amounts have remained unpaid. No penalties are assessed at this time.
4. Defendants shall pay the costs. Plaintiff's motion for attorney's fees, pursuant to N.C. Gen. Stat. § 97-88.1 is, in the discretion of the undersigned, DENIED, as this claim was not defended without reasonable grounds by defendant.
This case is HEREBY REMOVED from the Full Commission hearing docket.
This ___ day of ______, 1998.
FOR THE FULL COMMISSION
 S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
S/ _____________________ DIANNE C. SELLERS COMMISSIONER